DAVIS *et al.*, *Appellants*, *v.* VORIES.

Division One, November 3, 1897.

1. **Copyright:** DEFINITION OF. Copyright in the United States is the exclusive right of printing or otherwise multiplying copies of a published literary work and publishing and vending the same, with the right of preventing all others from doing so.

2. ———: ASSIGNMENT: INSTRUCTION. An owner of a copyright of a book in the United States has the exclusive right to sell his book in any manner and anywhere within the boundaries of the Union. He can transfer this exclusive right to another for the whole or any part of the country, and an instruction in the nature of a demurrer to the evidence, which tells the jury that the plaintiff had not the right to so transfer, is erroneous.

3. ———: ———: LICENSE. An assignment of a copyright on a book as to a particular territory amounts to nothing more than a license to sell within that territory and the legal title to the copyright remains in the owner.

Davis v. Vories.

4. EVIDENCE: INSUFFICIENCY·OF. The Supreme Court will not pass upon the insufficiency of the evidence when it is not fully set out in the record.

5. Fraud: MOTIVE: EVIDENCE OF OTHER ACTS. When the question is one of fraudulent intent, evidence of other acts and doings of a kindred character of the party charged therewith is competent, in both criminal and civil trials, as tending to illustrate or establish the intent or motive in the particular act.

*Appeal from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED AND REMANDED.

*Casteel & Haynes* for appellant.

(1) The deposition of James Leach was irrelevant and injected into the case a collateral issue, which was calculated to mislead and prejudice the jury. The evidence must correspond with the allegations, and be confined to the points in issue. 1 Greenl. on Ev. [14 Ed.], sec. 52; Best on Evidence, sec. 644; 7 Am. and Eng. Ency. of Law, p. 58, and notes; *Hubbard v. Railroad*, 39 Me. 506; *Lewis v. Smith*, 107 Mass. 334; *Cutler v. Howe*, 122 Mass. 541. (2) Under the pleadings and evidence the court should have directed a finding for plaintiffs, as prayed for in their first instruction. To make false representations actionable, either civilly or criminally, the representation must relate to some past or existing fact. Cooley on Torts [1 Ed.], 474; 8 Am. and Eng. Ency. of Law, 636, and notes; *Parker v. Marquis*, 64 Mo. 38; *Saunders v. McClintock*, 46 Mo. App. 216; *State v. Evers*, 49 Mo. 542. (3) Root had the right and power to assign to the defendant the exclusive right to sell the book called "Footprints of Time," and therefore there was a consideration for said notes. *Stephens v. Cody*, 14 How. U. S. 530; R. S. U. S., sec. 4952.

*S. G. Loring* and *Hall & Pike* for respondent.

(1)   The depositon of James Leach was clearly admissible.   The deposition shows that Leach was swindled by Root soon after Root obtained the six obligations from respondent.   It was admissible for the purpose of showing the intent upon. the part of Root and his agents to defraud.   *State v. Myers*, 82 Mo. 569; *State v. Bayne*, 88 Mo. 609; 1 Greenl. on Ev., sec. 53; Wharton on Ev. [2d Ed.], sec. 33.   (2)   The court committed no error in refusing the first instruction prayed for by plaintiffs.   E. C. Davis, if she received them at all, received said obligations from her husband, Asa G. Davis, long after their maturity, and she stood in exactly the same condition as if the suit had been prosecuted in the name of her husband.   *Turner v. Hoyle*, 95 Mo. 345; *Johnson v. McMurry*, 72 Mo. 282.

BRACE, J.—This is an action on six promissory notes dated the twenty-fourth day of September, 1879, amounting in the aggregate to $1,400, all payable within one year and bearing ten per cent interest from date; alleged in the petition to have been executed by the defendant to one R. T. Root, and by him assigned to the plaintiff A. G. Davis on the eleventh day of November, 1879, and by him assigned to his wife, the co-plaintiff Elizabeth C. Davis, on the fifth day of June, 1884.   The answer of the defendant admits the execution of the notes, and pleads as a defense failure of consideration, and that the same were procured by the fraudulent representations of the said Root to the defendant, and that if they were assigned as alleged, they were so assigned in consideration of the same fraudulent scheme set out in detail in the answer, and *in mala fide* to deprive him of his defense thereto.   It appears from so much of the evidence as is set out in the abstract that

the only consideration the defendant received for the notes sued on was an instrument of writing, executed in duplicate, which is as follows:

"TERRITORY DEED.

"Whereas, R. T. Root of Burlington, Iowa (in compliance with an act of Congress) did enter for copyright March 30th, 1874, and did obtain the copyright of a book entitled 'The Footprints of Time,' and whereas, Oliver H. P. Vories of Santa Rosa, Mo., represents that having personally examined, and thus become well satisfied with the merits and value of said 'Footprints of Time" now desires to obtain, and makes this application to purchase from R. T. Root the necessary supply of books, and the exclusive right to sell said 'Footprints of Time' upon the terms herein specified within the uncanvassed parts of the following described territory, viz., a territory containing a population of fifty thousand inhabitants, which said Vories may select in any territory not otherwise arranged for, provided that he takes not less than a county in a place.

"Now therefore this instrument witnesseth: That for and in consideration of the sum of fifteen hundred dollars, and for the further consideration that the said Oliver H. P. Vories agrees that he will in person, or by his agent or agents, promptly enter upon, and vigorously prosecute the work of canvassing each portion of the above territory by school districts and by townships, and will sell the aforesaid book in the regular way by subscription, and in that way only, I, R. T. Root, by these presents, do grant unto the said Oliver H. P. Vories the exclusive right to sell the said 'Footprints of Time,' from the date hereof, within the above described territory, but not elsewhere, neither in any other territory whatsoever, directly or indirectly, nor to sell said book in the territory hereby conveyed to be resold

in any other territory. And for and during the time necessary to make one thorough canvass of the territory hereby conveyed, but not to exceed three years from July 1st, 1878, and for such further time as the parties hereto may mutually agree upon, the said Oliver H. P. Vories is hereby authorized to draw on me for books sufficient to supply the above described territory, upon the conditions above mentioned and at the following prices: In cloth binding, one dollar and twenty-five cents each; and in library style of binding at one dollar and seventy cents each; the books to be delivered to the said Oliver H. P. Vories at the bindery or at the place of manufacture.

"Witness my hand this 24th day of September, 1879.

"R. T. Root."

"Received, this 24th day of September, A. D. 1879, from R. T. Root, a territory deed, of which the above is a full, perfect and exact copy, which I hereby accept.

"OLIVER H. P. VORIES.

"JOHN M'KITRICK, Witness."

The evidence for the defendant, except the deposition of James Leach, is not set out in the abstract, but it is therein stated that "defendant, to sustain the issues on his part introduced evidence tending to support the issues tendered in his answer, and tending to prove the facts predicated in the instructions given on his motion."

The plaintiff assigns for error the giving of the defendant's first and fourth instructions; the refusal to give the plaintiff's first and seventh; the modification by the court of his third and fourth instructions; and the admission of the deposition of Leach. The first instruction given for the defendant is as follows:

"1. The court instructs the jury that in law Root, the payee in the notes in suit, had no power to

assign to the defendant the exclusive right to sell the book in evidence, to wit, 'The Footprints of Time,' and that there was therefore a total failure of consideration for said notes.''

I.  It is not seen how this instruction for the defendant can be maintained.  Copyright in the United States is the "exclusive right of printing or otherwise multiplying copies of a published literary work, and publishing and vending the same, with the right of preventing all others from doing so."  4 Am. and Eng. Ency. of Law, 147; R. S. U. S., sec. 4952. It is not disputed that Root was the owner of the copyright of the book in question.  As such owner he had the exclusive right to sell his book in any manner anywhere in the United States.  This right he could transfer to another, as to the whole or any particular part of the country.  As was said by CLIFFORD, J., in *Parton v. Prang*, 3 Cliff. 537:  "Sales may be absolute or conditional, and they may be with or without qualification, limitation and restriction, and the rules of law applicable in such case to other personal property must be applied in determining the real character of a sale of literary property."  The right was a valuable one, specially protected by the law of the land.  R. S. U. S., sec. 4964.  As was said by the same judge in *Greene v. Bishop*, 1 Cliff. 186:  "Vendors are liable for the sale of a book which invades the copyright of another, on the same principle that a vendor of a machine or other mechanical structure, in the case of patent rights, is held liable for selling the manufactured article without the license or consent of the patentee."  It militates nothing against this right, its value, or the power of its possessor to dispose of it as to any particular locality, that the copyright itself may be indivisible as to locality, if so it be, as is maintained by Drone on Copyright, 335, on the authority of *Keene v. Wheatley et al.*, 9

Am. Law Reg. 46, and that an assignment of it as to a particular territory amounts to nothing more than a license to sell within that territory.

That the legal title to the copyright remains in the owner, and the instrument whereby he conveys a beneficial use therein is nothing more than a license, detracts nothing from the title or value of the beneficial interest conveyed. As was said in *Black v. Henry G. Allen Co.*, 42 Fed. Rep. 618, by SHIPMAN, J.: "Under section 4964, a license in writing, by instrument duly witnessed, may be given by the proprietor to any other person to the extent described in such license; and there is no restriction upon the power of the proprietor to assign or transfer in equity an exclusive right to use the copyrighted book in a particular manner or for particular purposes upon such terms and conditions as may be agreed upon. In such case the legal title remains in the proprietor; and a beneficial interest, to the extent which is agreed upon, vests in the other party, who has acquired an equitable right in the copyright, and who will be properly styled an 'assignee of an equitable interest.' " Curt. Cop. 225. See, also, *Black v. Henry G. Allen Co.*, 56 Fed. Rep. 764, and *Baldwin et al. v. Baird*, 25 Fed. Rep. 293. Evidently the court committed error in giving this instruction and for like reasons in refusing the plaintiff's seventh instruction.

II. Plaintiff's first instruction was in substance a demurrer to the evidence. As the issues tendered in the answer were, in substance, that the said Root and DeHart and Tatman entered into a conspiracy to cheat and defraud the defendant and the public and in pursuance thereof the said Root by himself and his agents DeHart and Tatman, falsely represented to defendant that they were selling from five to ten "Footprints of Time" and were making from $10 to $15 per day,

and that he, DeHart, had frequently gone out after supper and taken from two to three orders for said book before bedtime; that all northwest Missouri was still fresh and uncanvassed and no portion thereof with the exception of a few little towns had been canvassed by anyone for said book; that said book was a very rapid selling book; that large profits were and could be made from the sale of said book by those purchasing territory from him (Root); and Root, to evidence his misrepresentation and complete his swindle, read to respondent letters pretended to have been written him (Root) by persons claimed by him to be engaged in the sale of said book, in which it was pretended that large sums of money and enormous profits were made by them in the sale of said book; that the defendant was induced by such false and fraudulent representations to execute the notes sued on, and the same were assigned as charged in the petition in consummation of such fraud and swindle, and not in good faith.   And as it is admitted that the defendant's evidence tended to support the issues tendered by him, we can not see how the court committed error in refusing this instruction, even if we felt at liberty to convict the court of error in the absence of the evidence upon which alone it could be convicted.   If parties would complain of the insufficiency of evidence they must set it out in the record. For the same reasons we can not see that the court committed error in giving defendant's fourth or in modifying plaintiff's third and fourth instructions.

III. In the deposition of James Leach, transactions of the same complexion as those set out in defendant's answer, had by Root and his said agents with deponent, are detailed.   The fraudulent intent of these parties was a material issue in the defendant's case.   When the question in issue is one of fraudulent intent, or not,

"it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive in the particular act, directly in judgment." Per STORY, J., in *Wood v. U. S.*, 16 Pet. 342. This principle has been sanctioned and frequently applied in this court. *State v. Myers*, 82 Mo. 558; *State v. Bayne*, 88 Mo. 604; *State v. Beaucleigh*, 92 Mo. 490. As the evidence is not set out in the abstract, it can not be clearly seen in what relation the facts testified to in the deposition stood *as to time and place* with those detailed in the answer, and we can not tell whether or not they tended to illustrate or establish the intent of the parties in their transactions with the defendant as alleged in the answer; we can not say whether or not there was error in the admission of the deposition in evidence and will not rule upon this point.

The judgment will be reversed for the error stated in the first paragraph of the opinion and the cause remanded for new trial. All concur.

