WHEELER et al. v. ABILENE NAT. BANK BLDG. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 14, 1908.)

No. 2,602.

1. CORPORATIONS—TRUST—SINGLE MAJORITY STOCKHOLDER IN FIDUCIARY RELATION WITH MINORITY STOCKHOLDERS.

The holder of a majority of the stock of a corporation stands in a fiduciary relation to the holders of the minority of the stock, because he has a community of interest with them in the same property, and because they can act and contract in relation to the corporate property only through him.

2. SAME—DUTY OF MAJORITY STOCKHOLDER TO MINORITY STOCKHOLDERS.

The power of a single holder of a majority of the stock of a corporation devolves upon him the correlative duty to the holders of the minority of the stock to exercise good faith, care, and diligence to make the corporate property produce the largest possible amount, to protect the interests of the minority stockholders, and to secure and deliver to them their just proportion of the income and of the proceeds of the property.

3. SAME—SALE OF CORPORATE PROPERTY TO HIM FOR LESS THAN PRICE OBTAINABLE FROM ANOTHER, THOUGH FOR FAIR VALUE, VOIDABLE.

Any sale of the corporate property by a single holder of the majority of the stock by the use of the meetings of the board of directors and the meetings of the stockholders in legal form for its fair value, but for a smaller amount than he could have obtained for it from another, is voidable at the election of the minority stockholders.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 668.]

4. SAME—SALE VOIDABLE, NOT VOID—COURT MAY REQUIRE DEPOSIT AS CONDITION OF DECREE AVOIDING.

Such a sale is voidable, not void; and a court of equity may condition its decree of avoidance by a requirement that the complainant shall bid and deposit an amount equal to the amount paid at the sale and the expenses of a master's sale, to be applied in payment for the property in case no one bids more, or in case the depositor is the highest bidder.

5. SAME—SALE TO MAJORITY STOCKHOLDER AVOIDED—FACTS—CONCLUSIONS.

The holder of the majority of the stock of a corporation was its president, its creditor, and one of its board of directors. The four other members of the board were qualified by his transfer of one share of stock to each. After one of the holders of a minority of the stock had offered him $3,500 for the property of the corporation, and had notified the secretary that he desired to bid for it, that property was sold to the owner of the majority of the stock for $2,500, which was its fair value, by means of regular action of the meeting of the directors and of the meeting of the stockholders, at which the purchaser's stock was voted for the sale.

*Held,* the sale was voidable at the election of the minority stockholders.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 668.]

6. EQUITY—PRACTICE—MASTER'S CERTIFICATE OF EVIDENCE REQUISITE TO ASSAIL HIS FINDING OF FACT.

The master's finding of facts upon evidence taken before him cannot be impeached, in the absence from the record of his certificate, or other competent proof, either that the evidence presented is the entire evidence that was before him, or that it was all the evidence which was before him, relative to the specific finding or findings challenged.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Kansas.

Ross B. Gilluly and Elijah Robinson (William H. England and Arthur E. Lybolt, on the brief), for appellants.

G. W. Hurd (H. Southworth and J. H. Austin, on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. Two holders of the minority of the stock of the Abilene National Bank Building Company, a corporation, brought a suit in the court below to avoid a sale of all the property of the corporation to Hiland Southworth, who was the president of the corporation, its creditor, one of its board of directors, and the holder of the majority of its stock. After the issues had been joined the case was referred to a master to find the facts. He found them, exceptions to his finding were filed and overruled, and the court dismissed the bill. A portion of the testimony taken before the master appears to be printed in the transcript of the record before us, but no order of the court below that the master should return into court the evidence he obtained, and no certificate of the master that he has done so, or that the record contains that evidence, or a correct transcript of it, can be found. For this reason, and because the facts essential to a determination of the case appear on the face of the master's finding, the exceptions to his report and the evidence printed will not be farther noticed. A master's finding of facts upon evidence taken by him cannot be impeached, in the absence from the record of his certificate, or other competent proof, either that the evidence presented is the entire evidence taken by him, or that it contains all the evidence which was before him relative to the specific finding or findings challenged. Sheffield, etc., Ry. Co. v. Gordon, 151 U. S. 285, 293, 14 Sup. Ct. 343, 38 L. Ed. 164; Greene v. Bishop, 1 Cliff. 186, Fed. Cas. No. 5,763; Donnell v. Columbian Ins. Co., Fed. Cas. No. 3,987; McCourt v. Singers-Bigger, 145 Fed. 103, 112, 76 C. C. A. 73, 82; Scotten v. Sutter, 37 Mich. 526; Nay v. Byers, 13 Ind. 412; Fellenzer v. Van Valzah, 95 Ind. 128.

The following facts appear from the pleadings and the finding of the master: The only property of the corporation was a lot and building in Abilene, which was sold to Southworth, the holder of the majority of the stock of the company, in June, 1904. The fair value of this property was $2,500. The corporation had power to buy, sell, and deal in real estate, and it had issued 173 shares of stock. The complainants, who lived in the state of Vermont, owned 46 shares. The defendant Southworth, who resided in Abilene, in the state of Kansas, owned 101 shares. The defendants Humphrey, Malott, Ella M. Southworth, the wife of Southworth, and Stella Duckworth, his stenographer, held 1 share each which Southworth had transferred to them to qualify them to act as directors. Southworth was the president. Stella Duckworth was the secretary. Southworth, Mrs. Southworth, Stella Duckworth, Humphrey, and Malott constituted the board of directors. The corporation owed Southworth, but its property was of greater value than the amount of its debts. Malott and Humphrey inquired, and found that $2,500 was a fair price for the property, and the board sold and the corporation conveyed it to Southworth for that amount, paid the debts of the corporation, declared a dividend on its stock, and

remitted the proper amount to each stockholder; but the complainants refused to accept their dividends. In July, 1904, Wheeler, one of the complainants, objected to this sale and told Southworth he would give $3,500 for the property. In August, 1904, Southworth and wife conveyed the lot and building to the corporation. On August 29, 1904, Wheeler sent a letter to Stella Duckworth, the secretary of the corporation, which she received, wherein he wrote that if the property was offered for sale he desired an opportunity to bid upon it; but this letter was never brought to the attention of any meeting of the stockholders or of any meeting of the directors. On November 10, 1904, the board of directors accepted the reconveyance of the property. Malott said he had made diligent inquiry regarding its value, and that he could find no one who would place a higher value than $2,500 upon it. Southworth offered $2,500, the board unanimously voted to sell it to him for that price, and the corporation again conveyed it to him. Legal notice that there would be an annual meeting of the stockholders on December 6, 1904, to elect a board of directors and to transact such other business as might come before the meeting, was given. There were present at that meeting Hurd, Humphrey, Malott, Stella Duckworth, and Southworth, who together represented 111 shares of stock, and they voted unanimously to confirm the sale to Southworth for $2,500. Southworth and the other directors acted in good faith. Upon these facts the court below dismissed the bill, and the complainants appealed.

The question which this case presents is: May the holder of the majority of the stock of a corporation make a sale to himself, unassailable in equity, of all the property of the corporation for its fair value, when he knows that that value is only five-sevenths of the amount which the corporation can obtain for it. It is not material to the determination of this issue whether the notice of the stockholders' meeting specified, or failed to state, that the question of the confirmation of the sale to Southworth would be there considered, or whether or not the other proceedings of the defendants complied with the requirements of the law; and for the purposes of this decision it will be conceded, but it is not decided, that all the proceedings of the parties and of the corporation were in strict accordance with the forms of law. The objection to this sale lies deeper. It is that it was violative of the duty of a fiduciary.

A corporation holds its property in trust for its stockholders. The stockholders have a joint interest in the same property and in the same title. Community of interest in a common property or title imposes a community of duty and a mutual obligation to do nothing to impair either. It creates such a fiducial relation as makes it inequitable for any of those who thus share in the common property to do anything to or with it for their own profit, to the detriment of others who have the same rights. Jackson v. Ludeling, 21 Wall. 616, 622, 22 L. Ed. 492; Jones v. Missouri Edison Electric Co., 144 Fed. 765, 771; 75 C. C. A. 631, 637; Booker v. Crocker, 132 Fed. 7, 8, 65 C. C. A. 627, 628.

The holder of the majority of the stock of a corporation has the power, by the election of biddable directors and by the vote of his stock, to do everything that the corporation can do. His power to con-

trol and direct the action of the corporation places him in its shoes, and constitutes him the actual, if not the technical, trustee for the holders of the minority of the stock. He draws to himself and uses all the powers of the corporation. In effect he holds an irrevocable power of attorney from the minority stockholders to manage and to sell the property of the corporation, for himself and for them. Times, places, and notices of meetings of the directors and of meetings of stockholders become of secondary importance, because the presence, the vote, and the protest of holders of the minority of the stock are unavailing against the will of the holder of the majority. They can act and contract regarding the corporate property, they can preserve and protect their interests in it, only through him and through the courts.

This devolution of unlimited power imposes on a single holder of the majority of the stock a correlative duty, the duty of a fiduciary or agent, to the holders of the minority of the stock, who can act only through him, the duty to exercise good faith, care, and diligence to make the property of the corporation produce the largest possible amount, to protect the interests of the holders of the minority of the stock, and to secure and pay over to them their just proportion of the income and of the proceeds of the corporate property. Any sale of the property of the corporation by him to himself for less than he could obtain for it from another, or any other act in his interest to the detriment of the holders of the minority of the stock, becomes a breach of duty and of trust, renders the sale or act voidable at the election of the minority stockholders, and invokes plenary relief from a court of chancery. Jackson v. Ludeling, 21 Wall. 616, 622, 22 L. Ed. 492; Jones v. Missouri Edison Electric Co., 144 Fed. 765, 771, 75 C. C. A. 631, 637; Burnes v. Burnes, 137 Fed. 781, 790; 70 C. C. A. 357, 366; McCourt v. Singers-Bigger, 145 Fed. 103, 107, 76 C. C. A. 73, 77; Pepper v. Addicks (C. C.) 153 Fed. 383, 405; Wardell v. Railroad Company, 103 U. S. 651, 658, 26 L. Ed. 509; Menier v. Hooper's Telegraph Works, 9 Ch. App. Cas. 350, 352, 353; Goodin v. Cincinnati & Whitewater Canal Co., 18 Ohio St. 169, 182, 183, 98 Am. Dec. 95; Ervin v. Oregon Ry. & Nav. Co. (C. C.) 20 Fed. 577, 580, Id., 27 Fed. 625, 632; 2 Story's Eq. Jur. §§ 1261, 1262; Sage v. Culver, 147 N. Y. 241, 247, 41 N. E. 513; Farmers' Loan & Trust Co. v. N. Y., etc., R. R. Co., 150 N. Y. 410, 425, 430, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689; Hinds v. Fishkill, etc., Gas Co. (Sup.) 88 N. Y. Supp. 954, 957; Meeker v. Winthrop Iron Co. (C. C.) 17 Fed. 48; Sidell v. Missouri Pac. R. Co., 78 Fed. 724, 727, 24 C. C. A. 216, 219; Barr v. N. Y., L. E. & W. R. R. Co., 96 N. Y. 444, 449, 451, 456; Wright v. Oroville M. Co., 40 Cal. 20, 27; Pondir v. N. Y., L. E. & W. R. R. Co., 72 Hun, 384, 390, 25 N. Y. Supp. 560; Gregory v. Patchett, 33 Beavan, 595, 607; Meyer v. Staten Island Ry. Co., 7 N. Y. St. Rep. 245, 248. The reason for this rule is the detriment to the holders of the minority of the stock from such sales and transactions, and not the benefit the holder of the majority derives therefrom. Symmes v. Union Trust Co. (C. C.) 60 Fed. 830, 865; Memphis & Charleston R. R. Co. v. Woods, 88 Ala. 641, 7 South. 108, 7 L. R. A. 605, 16 Am. St. Rep. 81. It is the duty of the master of the corporation who sells its property to procure the highest possible price for it (Jack-

son v. Ludeling, 21 Wall. 616, 625, 22 L. Ed. 492); and, if he sells it to himself for less, the sale is voidable by the holders of the minority of the stock at their option, although he paid the fair market value for it. Miller v. Brown, 1 Neb. (Unof.) 154, 95 N. W. 797.

The principles which have been briefly reviewed and the decisions which have been cited in support of them spring from the law's jealous care of the fiduciary relations, from its persistent endeavor to prevent a conflict of duty and interest by removing from every person in such a relation every possible temptation to advance his own welfare in disregard of his duty to his correlate, by avoiding every transaction in which he has endeavored to do so. They have been repeatedly discussed and affirmed in the Supreme Court and in this court, and a more extended consideration of them is now unnecessary. Suffice it to say that one of the familiar rules they sustain and illustrate is that one may not be an agent to sell for another and a purchaser at the same time, that such a sale is voidable at the election of the principal, and that under this rule, and under the equitable principles to which reference has been made, the sale to Southworth cannot be sustained in a court of chancery. He grasped and held all the powers of the corporation. It could act and contract only through him. He was the agent through whom, and through whom alone, under the law, the corporation and the holders of the minority of its stock could sell its property. He sold it to himself by his use of the powers of the company. If that sale had been fair and open, after full opportunity to all interested to bid, for the highest amount that could be obtained for the property, it might have been sustained. But it was made for $2,500 to the holder of the majority of the stock, who was one of the members of the board of directors and the president of the company, and to whom one of its stockholders had offered $3,500 for the property only about four months before the sale, and who had written the secretary that, if it was offered for sale, he desired to bid.

The president of the corporation and the members of the board of directors may have acted in good faith, in the sense that they had no intent to inflict injury upon the holders of the minority of the stock. They may have believed that if they procured for the corporation the fair value of the property they discharged their whole duty. In this they were in error. If they could have obtained for the property by an open and honest sale $1,000 more than it was worth, it was their duty to the stockholders of the corporation to do so, and the holder of the majority of the stock could not be permitted to sell it to himself for less.

The sale, however, is voidable, not void, and the court below may require a complainant who seeks equity to do equity. The decree below is accordingly reversed, and the case is remanded to the Circuit Court, with directions to enter an interlocutory decree to the effect that the sale to Southworth be avoided, and the property be sold by a master, on condition that, within 60 days after the entry of the interlocutory decree, the complainants, or one of them, offers to pay for the property and deposits with the clerk of the court $3,000, to be applied in payment for the property at the master's sale in case no one offers more, and in case the depositor proves to be the highest bidder, other-

wise to be returned to him, and in case such a deposit is made to enter a decree for the sale of the property by a master, for a proper accounting, and for such other relief as may be proper, and in case no such deposit is made to enter a decree of dismissal of the bill for failure to comply with the condition specified; and it is so ordered.